JACK S. GRAY AND MARY B. GRAY T/A TOWER CIRCLE MOTEL v. NORTH CAROLINA INSURANCE UNDERWRITING ASSOCIATION

No. 84PA99

(Filed 16 June 2000)

**1. Unfair Trade Practices— settlement of insurance claims— acts prohibited by insurance statute—separate N.C.G.S. § 75-1.1 claim**

The Court of Appeals erred in reversing the trial court's amended judgment trebling the jury award of $117,000 to $351,000 under N.C.G.S. § 75-1.1, based on its conclusion that a reasonable jury could not find defendant insurance company's acts were done with such frequency as to indicate a general business practice, because: (1) although the ability to enforce N.C.G.S. § 58-63-15(11) rests with the Commissioner of Insurance, the acts proscribed in that statute were designed to protect the consuming public, and therefore, can be looked at for examples of conduct to support a finding of unfair or deceptive acts or practices under N.C.G.S. § 75-1.1 as a matter of law without the necessity of an additional showing of frequency indicating a "general business practice"; and (2) an insurance company's conduct of "not attempting in good faith to effectuate a prompt, fair and equitable settlement of claims in which liability has become reasonably clear" is a violation of N.C.G.S. § 75-1.1 that is separate and apart from any violation of N.C.G.S. § 58-63.15(11).

**2. Unfair Trade Practices— treble damages—not entire award—only unfair or deceptive trade practices claim**

The trial court properly trebled only the damages found by the jury that were proximately caused by the violation of N.C.G.S. § 75-1.1 because plaintiffs are not entitled to treble damages on the entire amount fixed by the verdict as damages, since plaintiffs' breach of contract damages are not damages arising from an unfair or deceptive trade practice claim under N.C.G.S. § 75-1.1.

**3. Unfair Trade Practices— attorney fees**

The Court of Appeals erred by reversing the trial court's award of attorney fees under N.C.G.S. § 75-16.1 based on the erroneous conclusion that plaintiffs failed to establish an unfair or deceptive trade practice claim under N.C.G.S. § 75-1.1.

Justice MARTIN did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 132 N.C. App. 63, 510 S.E.2d 396 (1999), finding no error in part and reversing in part an amended judgment entered by Parker, J., on 22 April 1997 in Superior Court, Dare County. Heard in the Supreme Court 15 November 1999.

*Vandeventer Black LLP, by Norman W. Shearin, Jr., and Robert L. O'Donnell, for plaintiff-appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by William W. Pollock; and Smith Helms Mulliss & Moore, L.L.P., by Larry B. Sitton and Matthew W. Sawchak, for defendant-appellee.*

FRYE, Chief Justice.

This case involves the relationship between N.C.G.S. § 75-1.1, which prohibits unfair and deceptive acts or practices, and N.C.G.S. § 58-63-15(11), which defines unfair practices in the settlement of insurance claims. *See* N.C.G.S. § 75-1.1(a) (1999); N.C.G.S. § 58-63-15(11) (1999). Plaintiffs contend that there is competent evidence to support a jury finding that defendant engaged in one or more acts prohibited by N.C.G.S. § 58-63-15(11), with such frequency as to indicate a general business practice constituting a violation of N.C.G:S. § 75-1.1; that the jury's special verdict and the trial court's findings in the amended judgment entitle plaintiffs to a finding that the said acts constituted a violation of N.C.G.S. § 75-1.1 separate from

and not based upon the conclusions made by the trial court in reliance upon a *per se* violation of N.C.G.S. § 58-63-15(11); that plaintiffs are entitled to treble damages in the amount of $1,119,770.73; and that plaintiffs are entitled to reasonable attorneys' fees pursuant to N.C.G.S. § 75-16.1. For the reasons stated below, we reverse and remand the decision of the Court of Appeals and hold that defendant violated N.C.G.S. § 75-1.1 separate and apart from any violation of N.C.G.S. § 58-63-15(11).

Defendant, the North Carolina Insurance Underwriting Association, is an association of insurance carriers created by the General Assembly under N.C.G.S. § 58-45-10 for the purpose of providing "essential property insurance" for the "beach area." N.C.G.S. §§ 58-45-1, -5, -10 (1999). Defendant issued a commercial windstorm and hail policy of insurance, effective 14 August 1993, to plaintiffs trading as the Tower Circle Motel. The Tower Circle Motel, which consisted of five buildings, was located in the Village of Buxton on Hatteras Island.

The policy insured the Tower Circle Motel against windstorm and hail damage but not against damage arising from flooding or rain. The policy did not provide fire insurance. The policy contained a standard mortgage clause, which provided in pertinent part:

7. **MORTGAGE HOLDERS**

    a. The term "mortgage holder" includes trustees.

    b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

No mortgage holders were listed in the declarations. Further, under the declarations in the insurance policy, plaintiffs' limits for covered losses were as follows: Buildings One and Two in the amount of $116,000 on each building; Buildings Three and Four in the amount of $58,000 on each building; and Building Five in the amount of $81,000. The policy limit for the covered loss to contents was $17,000 each for Buildings One and Two; $5,000 each for Buildings Three and Four; and $8,000 for Building Five.

On 31 August 1993, Hurricane Emily struck the Outer Banks and caused extensive damage to Hatteras Island, including the Tower Circle Motel. Plaintiffs timely filed a claim under their policy with

defendant for the wind damage to their property. Defendant contracted with Crittenden Adjustment Company (Crittenden) to adjust plaintiffs' claim. In a report dated 30 September 1993, Crittenden informed defendant that wind damage to Buildings One and Two exceeded the policy limits and recommended damage settlement of $116,000 each for Buildings One and Two. Crittenden also recommended damage settlements for Building Three in the amount of $4,276.38; Building Four in the amount of $4,144.38; and Building Five in the amount of $6,053. Crittenden's assessment of the cause of damages by wind to Buildings One and Two was later substantially corroborated, as were Crittenden's damages estimates. However, defendant did not pay the claims. Defendant concluded that the photographs taken by Crittenden did not reflect substantial damage and did not support the conclusion that Buildings One and Two were "total losses." On 6 October 1993, defendant assigned Martin Cutler as a co-adjuster. About two weeks later, defendant asked Crittenden to withdraw from further handling plaintiffs' claims.

On or about 30 September 1993, during the adjustment process, Georgia Gray, plaintiff Jack Gray's sister-in-law, through her counsel, forwarded to defendant a deed of trust on plaintiffs' property. In a letter accompanying the deed of trust, Ms. Gray's counsel indicated that the deed of trust in favor of Ms. Gray's deceased husband, Charles Gray, was outstanding and that Ms. Gray had succeeded to Charles Gray's interest in the property. Ms. Gray's counsel requested "that any loss payment be made payable to the note holder." Defendant then issued an "advance payment" of $25,000 on 21 October 1993, in the form of a check made payable to plaintiffs and Georgia B. Gray as joint payees. Plaintiffs returned the check on 5 November 1993, advising defendant that Georgia Gray was not a payee on their policy and that plaintiffs' obligation on the deed of trust had been paid in full.

On 10 May 1994, pursuant to a recommendation by Martin Cutler, defendant offered plaintiffs $60,821.51 in settlement of plaintiffs' claims under the policy. Plaintiffs rejected that offer.

Plaintiffs commenced a civil action against defendant in July 1994, asserting claims of breach of contract and unfair and deceptive practices and seeking declaratory judgment. On 10 August 1995, plaintiffs filed a motion for partial summary judgment, specifically asking the court to enter an order finding that "Georgia B. Gray is not entitled to any portion of any payments under the policy of insurance issued by defendant to plaintiffs trading as the Tower Circle Motel." On 11 September 1995, the trial court denied the motion.

**GRAY v. N.C. INS. UNDERWRITING ASS'N**

[352 N.C. 61 (2000)]

In December 1996, plaintiffs' claims were tried before a jury in the Superior Court, Dare County. After the presentation of evidence from both sides, the trial court submitted issues that were answered by the jury as follows:

ISSUE ONE:

Did the defendant, North Carolina Insurance Underwriting Association, breach the terms of the policy of insurance which was issued to the plaintiffs, Jack and Mary Gray?

ANSWER: YES

ISSUE TWO:

What amount of money damages are the Grays entitled to recover?

ANSWER: $256,256.91

ISSUE THREE:

Did the defendant, North Carolina Insurance Underwriting Association, do at least one of the following:

[ANSWER:] YES

(A) Fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(B) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[;]

(C) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

(D) Delay in the investigation or payment of claims by requiring an insured claimant to submit a preliminary claim report and then requiring subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(E) Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage[.]

ISSUE FOUR:

Did North Carolina Insurance Underwriting Association do any one or more of the above-stated acts with such frequency as to indicate a general business practice?

[ANSWER:] YES

ISSUE FIVE:

Were the plaintiffs, Jack and Mary Gray, injured as a proximate result of the defendant, North Carolina Insurance Underwriting Association's conduct?

[ANSWER:] YES

ISSUE SIX:

What amount, if any, have the Grays been injured?

ANSWER: $117,000.00

ISSUE SEVEN:

Are the plaintiffs, Jack and Mary Gray, entitled to be paid the proceeds under the insurance policy free of any claim or interest of any party not entitled to receive payment under said policy?

ANSWER: YES

On 26 March 1997, the trial court entered a judgment that incorporated the jury's verdict and findings. The trial court entered an amended judgment on 22 April 1997, setting out additional findings of fact; awarding plaintiffs $607,256.91, which included breach of contract damages in the amount of $256,256.91 and trebled damages in the amount of $351,000 for defendant's unfair and deceptive acts; awarding prejudgment interest on all sums awarded; and taxing costs to defendant, including attorneys' fees in the sum of $117,000. The trial court found that plaintiffs were entitled to the "proceeds under the policy of insurance free of any claim or interest of any party not entitled to receive payment under that policy."

Defendant appealed to the North Carolina Court of Appeals. Plaintiffs cross-appealed, contending, among other things, that the trial court erred by not concluding that defendant's conduct constituted a violation of N.C.G.S. § 75-1.1 separate and apart from and not based upon a violation of N.C.G.S. § 58-63-15(11). The Court of Appeals found no error in the judgment awarding damages based on the breach of contract claim. *Gray v. N.C. Ins. Underwriting Ass'n,*

132 N.C. App. 63, 73, 510 S.E.2d 396, 402 (1999). The Court of Appeals also found no prejudicial error in the trial court's judgment providing declaratory relief. *Id.* at 73, 510 S.E.2d at 403. However, the Court of Appeals reversed the trial court's judgment awarding treble damages and attorneys' fees, concluding that defendant's motion for directed verdict on plaintiffs' N.C.G.S. § 58-63-15(11) claim should have been granted and that the "award of treble damages and attorneys' fees based on a violation of Chapters 58 and 75 was erroneous." *Id.* at 72, 510 S.E.2d at 402. The Court of Appeals also concluded that the trial court did not abuse its discretion by failing to find a violation of N.C.G.S. § 75-1.1 separate and apart from any violation of N.C.G.S. § 58-63-15(11). *Id.* at 71, 510 S.E.2d at 401. On 24 June 1999, this Court allowed plaintiffs' petition for discretionary review.

I.

[1] Plaintiffs contend that defendant violated N.C.G.S. § 58-63-15(11) constituting a violation of N.C.G.S. § 75-1.1 and that defendant violated N.C.G.S. § 75-1.1 separate from and not based upon a violation of N.C.G.S. § 58-63-15(11). We agree with plaintiffs' latter contention.

N.C.G.S. § 75-1.1 provides in pertinent part:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

N.C.G.S. § 75-1.1(a), (b).

N.C.G.S. § 75-16 provides as follows:

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C.G.S. § 75-16 (1999).

In enacting N.C.G.S. §§ 75-1.1 and 75-16, the legislature intended to effect a private cause of action for consumers. *See Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981). In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. *See* N.C.G.S. § 75-1.1(a); *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998).

The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court. *See Ellis v. Northern Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 131 (1990). Ordinarily, once the jury has determined the facts of a case, the court, based on the jury's findings, then determines, as a matter of law, whether the defendant engaged in unfair or deceptive practices in or affecting commerce. *Id.* Furthermore, this Court has stated that "it does not invade the province of the jury for this Court to determine as a matter of law on appeal that acts expressly found by the jury to have occurred and to have proximately caused damages are unfair or deceptive acts in or affecting commerce under N.C.G.S. § 75-1.1." *Id.*

In *Marshall v. Miller*, 302 N.C. at 548, 276 S.E.2d at 403, this Court noted that a practice is deceptive if it has the tendency to deceive. This Court has also observed that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* Good faith is not a defense to an alleged violation of N.C.G.S. § 75-1.1. *Id.* Moreover, where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice. *See Johnson v. Beverly-Hanks & Assocs.*, 328 N.C. 202, 208, 400 S.E.2d 38, 42 (1991).

Insurance law in this state is governed by chapter 58 of the North Carolina General Statutes. N.C.G.S. § 58-63-15(11), the unfair claim settlement practices statute, provides the following:

> (11) Unfair Claim Settlement Practices.—Committing or performing with such frequency as to indicate a general business practice of any of the following: Provided, however, that no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner:

> 　. . . .

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

. . . .

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

. . . .

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

. . . .

l. Delaying the investigation or payment of claims by requiring an insured claimant, or the physician, of [or] either, to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information;

m. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage . . . .

N.C.G.S. § 58-63-15(11)(b), (f), (h), (l), (m) (alteration to (l) in original).

The plain language of N.C.G.S. § 58-63-15(11) provides that the Commissioner of Insurance has the authority to enforce the provisions of that subsection. *See* N.C.G.S. § 58-63-15(11). In *Pearce v. American Defender Life Ins. Co.*, this Court held that a violation of N.C.G.S. § 58-54.4 (the predecessor to N.C.G.S. § 58-63-15), as a matter of law, constituted an unfair or deceptive practice in violation of N.C.G.S. § 75-1.1. *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470, 343 S.E.2d 174, 179 (1986). However, the Court in *Pearce* was not interpreting the unfair claims settlement statute, now codified as N.C.G.S. § 58-63-15(11), but was interpreting what is now codified as N.C.G.S. § 58-63-15(1), titled "Misrepresentations and False Advertising of Policy Contracts." *See Jefferson-Pilot Life Ins.*

*Co. v. Spencer*, 336 N.C. 49, 53, 442 S.E.2d 316, 318 (1994) (acknowledging that the Court in *Pearce* held that a violation of N.C.G.S. § 58-63-15(1) constituted a violation of N.C.G.S. § 75-1.1).

In deciding that a violation of N.C.G.S. § 58-54.4 was a violation of N.C.G.S. § 75-1.1 as a matter of law, this Court in *Pearce* found as persuasive the reasoning in *Winston Realty Co. v. G.H.G, Inc.*, 314 N.C. 90, 331 S.E.2d 677 (1985):

> "Although defendant is correct in pointing out that Chapter 95 is regulatory in nature, this fact does not prevent the finding of an unfair or deceptive trade practice based on the conduct proscribed by Chapter 95. N.C.G.S. § [95-47.6] prohibits private personnel services from engaging in specific conduct and activities, including the conduct specified in subsections (2) and (9) . . . . Although the authority to enforce the Chapter 95 provisions rests with the Commissioner of Labor, it is obvious that the list of proscribed acts found in N.C.G.S. § 95-47.6 were designed to protect the consuming public. The Court of Appeals confronted a similar issue in *Ellis v. Smith- Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E.2d 271 (1980), where the defendant contended plaintiff could not recover damages under N.C.G.S. § 75-1.1 because unfair and deceptive acts in the insurance industry were regulated exclusively by the insurance statutes, N.C.G.S. § 58-54.1, [ch. 58, art. 3A (1982 & Supp. 1985) (amended and recodified as ch. 58, art. 63 (1987))], which do not contain a right of private action. Chapter 95 similarly contains no right of private action. The *Ellis* court held that N.C.G.S. § 75-1.1 does provide a remedy for unfair trade practices notwithstanding that insurance is regulated by statute. 48 N.C. App. at 183, 268 S.E.2d at 273. We find this reasoning persuasive and hold that a violation of either or both N.C.G.S. §§ 95-47.6(2) and (9) as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75-1.1."

*Pearce*, 316 N.C. at 469, 343 S.E.2d at 179 (quoting *Winston Realty Co.*, 314 N.C. at 97, 331 S.E.2d at 681).

We find this reasoning equally persuasive and applicable in the instant case. Although the authority to enforce N.C.G.S. § 58-63-15(11) rests with the Commissioner of Insurance, the acts proscribed in N.C.G.S. § 58-63-15(11) were designed to protect the consuming public. *See Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995) (stating that "violations of statutes designed to pro-

tect the consuming public and violations of established public policy may constitute unfair and deceptive practices.").

We also find as persuasive the reasoning of a federal district court sitting in this state:

"Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" and "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" are prohibited by Chapter 58 with regard to first party claims. N.C. Gen. Stat. § 58-54.4(11)c & f (1982). The court believes these practices, if found by the jury, could support a finding of unfair or deceptive acts or practices under Chapter 75.

*U.S. Fire Ins. Co. v. Nationwide Mut. Ins. Co.*, 735 F. Supp. 1320, 1328 (E.D.N.C. 1990).

We agree with the practice of looking to N.C.G.S. § 58-63-15(11) for examples of conduct to support a finding of unfair or deceptive acts or practices. Although N.C.G.S. § 58-63-15(11) does regulate settlement claims in the insurance industry, insurance companies are not immune to the general principles and provisions of N.C.G.S. § 75-1.1.

An insurance company that engages in the act or practice of "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," N.C.G.S. § 58-63-15(11)(f), also engages in conduct that embodies the broader standards of N.C.G.S. § 75-1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers. *See Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. Thus, such conduct that violates subsection (f) of N.C.G.S. § 58-63-15(11) constitutes a violation of N.C.G.S. § 75-1.1, as a matter of law, without the necessity of an additional showing of frequency indicating a "general business practice," N.C.G.S. § 58-63-15(11).

In the instant case, the insurance policy specifically stated that it contained all the terms, agreements, and provisions governing the relationship between plaintiffs and defendant. The policy provided that defendant would pay for a covered loss to each mortgage holder listed in the policy. However, no mortgage holders were actually listed in the policy. The policy did not contain defendant's unwritten practice of naming as payee on settlement checks any person from

whom it receives a letter claiming that such person has an interest in the insured property. In its answer to an interrogatory propounded to defendant by plaintiffs, defendant admitted that it was defendant's practice to "include as payees all persons who have informed defendant of a mortgage or other interest in the property." At trial, Donald Stauffacher, an assistant plan manager with defendant, testified that "[w]henever we receive notification that there is a lien holder, a mortgagee on a property that we're insuring, we protect that interest by naming them as a payee on any claims check," regardless of whether that mortgage holder is listed on the policy. Although the declarations of the policy did not name Georgia or Charles Gray as a mortgage holder and despite plaintiffs' objections, defendant continued to include Ms. Gray's name on the settlement checks.

Defendant contends that it was legally justified in continuing to include Ms. Gray's name on the settlement checks in order to protect itself from suit. We reject this contention for two reasons. First, assuming *arguendo* that defendant believed that some third party (here, plaintiff Jack Gray's sister-in-law) might file a lawsuit against defendant, such a belief would be an insufficient basis for withholding payment of the policy proceeds to the beneficiary of the policy. The third party here was not a mortgage holder listed in the policy of insurance, and nothing in the policy authorized defendant to delay payment to the policyholder by naming as an additional payee anyone who wrote a letter claiming an interest in the property.

Second, the threat of a lawsuit by the third party against defendant was tenuous at best. The copy of the deed of trust offered into evidence did not identify Ms. Gray as the beneficiary. In April 1994, Cutler informed defendant that Ms. Gray and her attorney had failed to respond to requests to produce a note and the original deed of trust. Defendant, having a duty to pay insurance proceeds to plaintiffs for wind damage, unnecessarily frustrated plaintiffs' ability to recover any amount due under the policy by continuing to include Ms. Gray's name on the settlement checks.

Furthermore, defendant's actions were exacerbated by its apparently arbitrary rejection of Crittenden's damages estimates and its ready acceptance of Cutler's disparate damages estimate.

In the instant case, in answering Issue Three on the verdict sheet, the jury found that defendant committed at least one of the following acts:

(A) Fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(B) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[;]

(C) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

(D) Delay in the investigation or payment of claims by requiring an insured claimant to submit a preliminary claim report and then requiring subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(E) Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage[.]

The Court of Appeals assumed, without deciding, that there was sufficient evidence to warrant submission of Issue Three to the jury but concluded that a reasonable jury could not find that defendant's acts "were done with such frequency as to indicate a 'general business practice.'" *Gray*, 132 N.C. App. at 69, 510 S.E.2d at 400. However, we conclude that the evidence at trial, when taken in a light most favorable to plaintiffs, was sufficient to sustain a jury verdict in plaintiffs' favor on this issue. *See Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (stating the standard of review of directed verdict). Specifically, there was sufficient evidence to sustain a jury verdict that defendant did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear. As we now hold that "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" is a violation of N.C.G.S. § 75-1.1, it follows that defendant committed a violation of N.C.G.S. § 75-1.1 separate and apart from any violation of N.C.G.S. § 58-63-15(11). Defendant's conduct constituted an unfair or deceptive act or practice in or affecting commerce that proximately caused injury to plaintiffs. *See First Atl. Mgmt. Corp.*, 131 N.C. App. at 252, 507 S.E.2d at 63. Although the trial court did not make this finding in its amended judgment, the trial court, nevertheless, trebled

the jury award of $117,000 to $351,000 upon its finding of a violation of N.C.G.S. § 75-1.1. Accordingly, we conclude that there is no prejudicial error in the trial court's amended judgment awarding damages.

## II.

Having decided that defendant violated N.C.G.S. § 75-1.1 separate and apart from any violation of N.C.G.S. § 58-63-15(11), we need not address plaintiffs' contention that defendant committed acts proscribed under N.C.G.S. § 58-63-15(11) with such frequency as to constitute a general business practice and, therefore, violated N.C.G.S. § 75-1.1.

## III.

## A.

[2] Plaintiffs next contend that if defendant violated N.C.G.S. § 75-1.1, they are entitled to damages in the sum of three times $373,256.91, the total amount fixed by the verdict as damages. We disagree.

Section 75-16 provides that if anyone is injured "by reason of any act or thing done . . . in violation of the provisions of this Chapter," that person can sue "on account of such injury done." N.C.G.S. § 75-16. The statute further provides that "in such case judgment shall be rendered . . . for treble the amount fixed by the verdict." *Id.* Thus, if a defendant violates N.C.G.S. § 75-1.1, treble damages shall be awarded. *See Bhatti v. Buckland,* 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991). Plaintiffs contend that the language in N.C.G.S. § 75-16, "treble the amount fixed by the verdict," means that the trial court should treble the entire award that includes damages for breach of contract and damages from the violation of N.C.G.S. § 75-1.1. However, plaintiffs' breach of contract damages are not damages arising from a violation of N.C.G.S. § 75-1.1.

In forging N.C.G.S. § 75-16, the legislature intended for the phrase "treble the amount fixed by the verdict" to mean that damages *proximately caused* by a violation of N.C.G.S. § 75-1.1 shall be trebled, not that damages on every claim that happens to arise in a case involving a violation of N.C.G.S. § 75-1.1 shall be trebled. This Court has stated that in order to recover treble damages, a plaintiff must show that he "suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Pearce,* 316

N.C. at 471, 343 S.E.2d at 180; *accord Ellis*, 326 N.C. at 226, 388 S.E.2d at 131; *see also* Noel L. Allen, *North Carolina Unfair Business Practice* § 10-3(a), at 222 (1995) ("The damages to be trebled must only be those damages as determined by the factfinder that were a direct and proximate result of the § 75-1.1 violation.").

In the instant case, the trial court instructed the jury that Issue One involved breach of contract liability and that Issue Two involved damages from that breach of contract, including consequential damages. On Issue Two, the jury determined that plaintiffs were entitled to money damages of $256,256.91 as a result of the breach of contract of insurance. Under Issue Six, the jury determined that plaintiffs were injured in the amount of $117,000 as a result of defendant's violation(s) of N.C.G.S. § 58-63-15(11). The jury made no specific findings of fact to support the award of damages under Issue Two, other than the finding regarding the breach of contract of insurance. Further, the trial court could not have properly concluded that the breach of contract itself constituted a violation of N.C.G.S. § 75-1.1, and the trial court could not have properly trebled the breach of contract damages. *See Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (holding that a mere breach of contract is not sufficient to make out a claim under N.C.G.S. § 75-1.1; substantial aggravating circumstances attendant to the breach must be shown), *disc. rev. denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). After the jury found that defendant violated N.C.G.S. § 58-63-15(11), the trial court then found, as a matter of law, that defendant violated N.C.G.S. § 75-1.1. The trial court then trebled the jury award of $117,000 to $351,000 pursuant to N.C.G.S. § 75-16. Accordingly, the trial court correctly trebled only the damages found by the jury in Issue Six—those proximately caused by the violation of N.C.G.S. § 75-1.1.

B.

Next, plaintiffs, assuming that they are entitled to treble damages, contend that they should not be required to elect between the breach of contract damages determined in Issue Two of the jury verdict and the "separate and distinct damages" determined in Issue Six of the jury verdict. Since neither plaintiffs in their petition for discretionary review nor defendant in its response thereto raised the issue of election of remedies, this issue is not properly before the Court, and we decline to address it. *See* N.C. R. App. P. 16(a).

IV.

[3] In their final argument, plaintiffs contend that the Court of Appeals erred by reversing the trial court's award of reasonable attorneys' fees pursuant to N.C.G.S. § 75-16.1. We agree.

The award of attorneys' fees for an unfair or deceptive practice claim under N.C.G.S. § 75-1.1 is governed by N.C.G.S. § 75-16.1:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
>
> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
>
> (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C.G.S. § 75-16.1 (1999).

The Court of Appeals reversed the award of attorneys' fees, holding that there was no violation of N.C.G.S. § 75-1.1. Having concluded that plaintiffs have established such a violation, we reverse that portion of the Court of Appeals' decision that reverses the trial court's award of attorneys' fees. Upon remand, the trial court may consider an award of attorneys' fees for services rendered after the entry of its judgment. *See City Fin. Co. of Goldsboro, Inc. v. Boykin*, 86 N.C. App. 446, 449-50, 358 S.E.2d 83, 85 (1987) (holding that N.C.G.S. § 75-16.1 includes fees for services rendered at all stages of litigation, including appeals).

For the foregoing reasons, we reverse the decision of the Court of Appeals as to the issues set forth herein. Accordingly, we remand this case to the Court of Appeals for further remand to the Superior Court, Dare County, for reinstatement of the trial court's amended judgment.

REVERSED AND REMANDED.

Justice MARTIN did not participate in the consideration or decision of this case.