DEFEAT THE BEAT, INC., Plaintiff v. UNDERWRITERS AT LLOYD'S LONDON and PETERSEN INTERNATIONAL UNDERWRITERS, Individually and Collectively, Defendants

No. COA08-101

(Filed 2 December 2008)

1. Insurance— event cancellation policy—absence of lost profits coverage

An event cancellation insurance policy for a band competition did not cover lost profits from low ticket and program sales, low video disc sales, or low T-shirt and souvenir sales resulting from a 35-minute interruption of the event by a thunderstorm where the policy stated that the insured loss only included profit "where insured and stated in the Schedule," and the schedule of benefits did not include lost profits.

2. **Insurance; Unfair Trade Practices— event cancellation policy—adjuster's misrepresentations—unfair claim settlement practices—absence of monetary injury**

   Plaintiff insured under an event cancellation policy had no claim against defendant underwriters for unfair and deceptive claim settlement practices based upon an adjuster's misrepresentation of coverages by indicating to plaintiff that plaintiff had a valid claim under the policy and that payment was imminent or based upon defendants' failure to deny or affirm coverage of the claim within a reasonable time after proof of loss where plaintiff presented no evidence of any present monetary injury caused by the alleged actions during the settlement phase.

3. **Insurance— event cancellation policy—Surplus Lines Act—no private right of action**

   Plaintiff insured under an event cancellation policy for a band competition had no private right of action against defendant underwriters under the provision of the Surplus Lines Act (N.C.G.S. § 58-21-45(a)) requiring prompt delivery of a policy to the insured based upon defendants' failure to provide insured with a copy of the policy prior to the event.

4. **Unfair Trade Practices— event cancellation insurance—failure to promptly deliver policy**

   Defendant insurance underwriters' mere failure to promptly deliver a copy of an event cancellation policy to the insured does not constitute an unfair or deceptive act as a matter of law.

5. **Unfair Trade Practices— event cancellation insurance—agent's erroneous statements**

   The erroneous statements by an insurance agent to the purchaser of an event cancellation policy that the sole distinction between the basic coverage and the adverse weather coverage was that with basic coverage, only the stadium manager had the authority to cancel or suspend an event due to adverse weather, when combined with defendant underwriters' failure to promptly deliver a copy of the policy to the insured, did not constitute an unfair or deceptive act within the purview of N.C.G.S. § 75-1.1, especially since defendants ultimately provided the purchaser with adverse weather coverage.

**6. Insurance— event cancellation policy—bad faith refusal to settle claim—summary judgment**

> The trial court did not err by granting summary judgment for defendant underwriters with respect to plaintiff insured's claim for bad faith refusal to settle a claim under an event cancellation policy where plaintiff did not forecast evidence tending to establish a valid claim under the policy.

Appeal by plaintiff from judgment entered 23 August 2007 by Judge Timothy L. Patti in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 June 2008.

> *Caudle & Spears, P.A., by Christopher J. Loebsack and Christopher P. Raab, for plaintiff appellant.*

> *Parker Poe Adams & Bernstein, LLP, by David N. Allen, Lori R. Keeton, and Scott S. Addison; and Of Counsel, Fields Howell Athans & McLaughlin, LLP, by Paul L. Fields, Jr., and Nathan M. Thompson, for defendant appellees.*

McCULLOUGH, Judge.

Defeat The Beat, Inc. ("plaintiff") appeals from the entry of summary judgment in favor of Underwriters At Lloyd's London ("Lloyd's London") and Petersen International Underwriters ("Petersen International") (collectively, "defendants").

Under N.C.R. Civ. P. 56(c) (2007), summary judgment is properly granted when " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " Thus, "the standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Further, the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted).

The undisputed facts and procedural history pertinent to the instant appeal are as follows: Plaintiff is a North Carolina corporation organized for the purpose of hosting an annual marching band competition for historically black colleges. On or about 6 July 2004, plaintiff, through its Chief Executive Officer Karen Blackmon, contacted

**DEFEAT THE BEAT, INC. v. UNDERWRITERS AT LLOYD'S LONDON**

[194 N.C. App. 108 (2008)]

Stacy Fields for assistance in procuring insurance for the 2004 Defeat the Beat Battle of the Bands event, which was scheduled to occur at Memorial Stadium in Charlotte on 21 August 2004 ("the band competition"). Fields worked as an independent contractor for defendants and had procured approximately three insurance policies through Lloyd's London prior to her meeting with Blackmon.

Blackmon communicated to Fields that she was interested in obtaining coverage "to protect . . . the moneys that [she] had put into the event . . . [and to insure] that [she] wouldn't take a loss whatsoever." After discussing various policies, Blackmon filled out an "Application for Cancellation/Abandonment & Non-Appearance Insurance." Blackmon listed budgeted expenses of $540,000.00 and anticipated revenue of $600,000.00 on the application form. She also checked boxes indicating that, if available, she was interested in obtaining loss of net income, adverse weather, and reduced attendance coverage. This application was submitted to defendants on 6 July 2004.

In response to the application, Petersen International on behalf of Lloyd's London sent Fields "A Proposal for Event Cancellation Insurance" ("the proposal"). The proposal expressly provided:

**Sum Insured**: US$540,000

Cover for Entire Cancellation of the Event Only

Cover for Non Refundable Costs and Expenses only (i.e. no cover for profits)

The proposal set forth three levels of coverage as follows:

**Basic Premium:** US$8,805

**ADVERSE WEATHER:** Additional Premium to Include Adverse Weather (which endangers Human Life only): US$28,350

**TERRORISM:** Additional Premium to Include TRIA Terrorism: US$8,505

Blackmon elected the basic premium level and paid the requisite $8,805.00 for the policy. Plaintiff did not pay the additional premium for Adverse Weather coverage. Lloyd's London then subscribed to a contract of insurance on 12 August 2008. Plaintiff, however, did not receive a copy of this policy. Blackmon believed that the basic coverage and the adverse weather coverage were essentially the same, with the only distinction between the two policies being that with adverse

weather coverage, Blackmon, rather than the stadium manager, could decide if and when to stop the event due to adverse weather.[1]

At 6:00 p.m. on 21 August 2004, the band competition began, despite a light rain. At around 6:40 p.m., the stadium manager decided to suspend the band competition because of thunder and lightning. The event was interrupted for approximately 35 minutes. At this time, a number of attendees and patrons who had been waiting in line began leaving the stadium. Sometime between 7:15 p.m. and 7:30 p.m., the lightning subsided, and the band competition resumed and continued uninterrupted until its completion at 11:00 p.m. Ultimately, the band competition was not as successful as it had been the prior year. Overall, attendance was down 35% from the year before.

Thereafter, sometime in early September, plaintiff contacted Fields to inquire about the policy, as plaintiff did not have a copy of the policy. Neither Fields nor plaintiff obtained a copy of the policy until this time. Upon notifying defendants, defendants provided plaintiff with a copy of the policy, which provides, in part, as follows:

1.1 This insurance is to indemnify the Assured for their **Ascertained Net Loss (as defined herein)**, should the insured Event(s) described in the Schedule, be necessarily Cancelled, Abandoned, Postponed, Interrupted or Relocated, in whole or in part, which necessary Cancellation, Abandonment, Postponement, Interruption or Relocation is the sole and direct result of any cause beyond the control of the Assured and the participants therein (except as hereinafter excluded), subject always to the terms, conditions and exclusions contained herein or endorsed hereon.

\* \* \* \*

2.1 **Ascertained Net Loss means** such sums as represent:— (a) Expenses ·which have been irrevocably expended in connection with the insured Event(s), less any savings the Assured is able to effect to mitigate such loss, and (b) **Profit (where insured and stated in the Schedule)** which the Assured can satisfactorily prove would have been earned had the insured Event(s) taken place.

\* \* \* \*

---

1. The parties dispute whether Blackmon's belief was based on representations by Stacy Fields.

2.4  Profit **(where insured)** means Gross Revenue less Expenses.

(Emphasis added.)

The schedule of benefits attached to the policy provides in part:

Limit of Indemnity **Excluding Profit:** US$540,000

Limit of Indemnity **Including Profit:**

**(Profit insured only if this section completed) N/A**

* * * *

Exclusion:  TERRORISM COVERAGE

(Emphasis added.)

On 15 September 2004, Blackmon submitted a claim to defendants for lost revenue in the amount of $357,128.00, the difference between the $540,000.00 policy limit and the $182,872.00 of actual revenue generated by the band competition.

Despite a recommendation by insurance adjustor, Mike Tocicki, that defendants set aside a "precautionary reserve of up to $124,000" for plaintiff's loss, including reduction in attendee income, lost program income, lost T-shirt income, and lost CD income, defendants determined that plaintiff did not have coverage for the lost profit that plaintiff sought to recover. Although plaintiff did not pay the $28,350.00 premium for adverse weather coverage, the policy fails to list adverse weather as an exclusion on the schedule of benefits. On 3 May 2006, defendants notified plaintiff that they would pay $37,135.20 for non-refundable costs and expenses lost due to the interruption of the insured event because of the adverse weather. Defendants tendered payment of $37,135.20 to plaintiff on 30 May 2006.

On 3 October 2006, plaintiff brought suit against defendants, alleging breach of contract, bad faith, and unfair and deceptive trade practices. Defendants moved for summary judgment, contending that plaintiff sought to recover lost profits, which are not covered under the policy. On 23 August 2007, the trial court granted summary judgment for the defendants. Plaintiff now appeals.

## I. Amount of damages

[1] First on appeal, plaintiff contends that the trial court erred in granting summary judgment with respect to the breach of contract

claim because there is an issue of disputed fact as to the amount of damages attributable to the interruption of plaintiff's insured band competition. We disagree, as we find that plaintiff has failed to forecast evidence to bring itself within the terms of the policy.

As previously discussed, upon motion, summary judgment is appropriately entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). The moving party bears the burden of showing that no triable issue of fact exists. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that the non-moving party cannot surmount an affirmative defense which would bar the claim. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party has met its burden, the non-moving party must forecast evidence that demonstrates the existence of a *prima facie* case. *See id.* N.C. Gen. Stat. § 1A-1, Rule 56(e), provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

When examining whether an insurance policy is breached, we begin with the "well-settled principle that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). The insured party "has the burden of bringing itself within the insuring language of the policy." *Hobson Construction Co. v. Great American Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984), *disc. review denied*, 313 N.C. 329, 372 S.E.2d 890 (1985).

Here, in moving for summary judgment, defendant produced evidence demonstrating that an essential element of plaintiff's claims is

**DEFEAT THE BEAT, INC. v. UNDERWRITERS AT LLOYD'S LONDON**

[194 N.C. App. 108 (2008)]

nonexistent. Specifically, our examination of the record before us reveals that plaintiff has failed to show that the loss complained of is embraced within the insuring language of the policy. First, defendants produced the document entitled "A Proposal for Event Cancellation Insurance" that expressly provides that the coverage is "for Non Refundable costs and expenses only (i.e. no cover for profits)." Likewise, defendants produced a copy of the policy, and under the terms of Section 2.1 of such policy, it is clear that the insured loss or "ascertained net loss" only includes profit "where insured and stated in the Schedule." Defendants introduced a copy of the schedule of benefits, showing that profit is not stated on such schedule, and therefore, is not insured under the policy. Thus, defendants met their burden in establishing that the lost profit from low ticket sales, low DVD sales, low T-shirt and souvenier sales caused by the 35-minute interruption, which plaintiff asserts as damages under its breach of contract and bad faith claims, are not insured under the terms of the policy.

Given that defendants established that essential elements of the non-moving party's claims are nonexistent, the burden then shifted to plaintiff, the non-moving party, to forecast evidence or specific facts that demonstrate the existence of some sort of loss, insured under the terms of the policy, which defendants refused to pay.[2] Under Section 2.1 of the policy, this would include "[e]xpenses which have been irrevocably expended in connection with the insured Event(s), less any savings the Assured is able to effect to mitigate such loss[.]" While plaintiff alleged in an interrogatory response that "Plaintiff has received $37,135.20, an amount that is woefully less than Plaintiff should have been paid under the insurance policy in question[,]" plaintiff has failed to set forth specific facts or forecast evidence that it incurred any non-refundable expenses and costs as a result of the 35-minute interruption in excess of the $37,135.20 that defendants have already paid. The only facts set forth by plaintiff demonstrate an uninsured loss consisting of lost revenue. Because plaintiff failed to meet this burden of establishing a net loss that defendant was obligated to pay under the terms of the contract, yet refused to pay, there

2. It is clear from the record that plaintiff purchased the basic coverage, rather than the adverse weather coverage; however, because only terrorism and not adverse weather is listed as an exclusion on the schedule of benefits, it is not clear whether adverse weather was an exclusion under the policy. We resolve this ambiguity in favor of the non-moving party and assume that any ascertained net loss which resulted from the adverse weather is insured under Section 1.1 of the Policy. Nonetheless, plaintiffs have produced no evidence demonstrating that the adverse weather resulted in an ascertained net loss, as defined and insured under the terms of the policy.

is no issue of disputed fact with respect to the damages element of the breach of contract claim. Accordingly, the trial court's grant of summary judgment in defendant's favor with respect to this claim was proper. This assignment of error is overruled.

## II. Unfair and Deceptive Trade Practices

Causes of action for unfair or deceptive practices are distinct from breach of contract actions. *Boyd v. Drum*, 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998), *aff'd per curiam*, 350 N.C. 90, 511 S.E.2d 304 (1999). An action for unfair or deceptive practices is a creation of statute, and is therefore *sui generis*, so the cause of action exists independently, regardless of whether a contract was breached. *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984), *disc. review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984). Thus, even if an insurance company rightly denies an insured's claim, and therefore does not breach its contract, as here, the insurance company nevertheless must employ good business practices which are neither unfair nor deceptive.

Trade practices in the insurance business are regulated by Chapter 58, Article 63 of the North Carolina General Statutes. N.C. Gen. Stat. § 58-63-1 (2007). Unfair and deceptive trade practices are prohibited generally, N.C. Gen. Stat. § 58-63-10 (2007); and unfair and deceptive claim settlement practices are prohibited specifically, N.C. Gen. Stat. § 58-63-15(11) (2007).

Although N.C. Gen. Stat. § 58-63-15(11) provides that "no violation of this subsection shall of itself create any cause of action in favor of any person," a plaintiff's remedy for violation of the unfair claim settlement practices statute is the filing of a claim pursuant to N.C. Gen. Stat. § 75-1.1, the unfair or deceptive practices statute. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000). In order to establish a violation of N.C. Gen. Stat. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs; a court may look to the types of conduct prohibited by N.C. Gen. Stat. § 58-63-15(11) for examples of conduct which would constitute an unfair and deceptive act or practice. *Country Club of Johnston Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 245-46, 563 S.E.2d 269, 279 (2002).

### a. Unfair Claim Settlement Practices

[2] First, plaintiff claims defendants committed unfair and deceptive claim settlement practices, including: that insurance adjustor Mike Tocicki misrepresented pertinent facts or insurance policy provisions relating to coverages at issue by indicating to plaintiff that plaintiff had a valid claim under the policy and that payment was "imminent," in violation of N.C. Gen. Stat. § 58-63-15(11)(a); and that defendants failed to affirm or deny coverage of the claim within a reasonable time after the proof of loss statement had been completed, in violation of N.C. Gen. Stat. § 58-63-15(11)(e). While these actions would satisfy the unfair and deceptive trade act or practice element of the claim, plaintiff has presented no evidence of any present monetary injury caused by these alleged actions during the settlement phase; therefore, plaintiff's evidence does not establish the third element of a claim under N.C. Gen. Stat. § 75-1.1. *See Allen v. Ferrera,* 141 N.C. App. 284, 292, 540 S.E.2d 761, 767 (2000); *Gray,* 352 N.C. at 74-75, 529 S.E.2d at 684-85. Accordingly, these arguments are without merit.

### b. Surplus Lines Act

[3] Next, plaintiff contends that defendants committed an unfair trade practice by failing to provide plaintiff with a copy of its insurance policy prior to the band competition in violation of Section 58-21-45(a) of the Surplus Lines Act.[3] Plaintiff contends that if Blackmon had an opportunity to read the policy prior to the band competition, then she would have realized the scope of the policy and would have purchased additional coverage on behalf of plaintiff. We, however, find plaintiff's reliance on N.C. Gen. Stat. § 58-21-45(a) to be misplaced.

First, plaintiff has no private right of action with regard to the provisions of the Surplus Lines Act. Pursuant to § 58-21-105, "any person violating any provision of this Article shall be subject to a civil penalty, payment of restitution, or both, in accordance with G.S. 58-2-70." N.C. Gen. Stat. § 58-21-105(b). Section 58-2-70, however, does not confer to plaintiff a private right of action. Rather, it sets

---

3. N.C. Gen. Stat. § 58-21-45(a) provides, in part:

(a) As soon as surplus lines insurance has been placed, the producing broker or surplus lines licensee shall promptly deliver the policy to the insured. If the policy is not then available, the broker or licensee shall promptly deliver to the insured a certificate described in subsection (d) of this section, cover note, binder, or other evidence of insurance.

forth the administrative procedure to be initiated by the Insurance Commissioner. N.C. Gen. Stat. § 58-2-70.

**[4]** Moreover, plaintiff has not cited any precedent holding that a violation of the Surplus Lines Act of Article 21 is a *per se* unfair and deceptive act or practice under N.C. Gen. Stat. § 75-1.1 (2007); likewise, the failure to promptly deliver a copy of the insurance policy to the insured is not listed as an example of one of the *per se* unfair and deceptive acts or practices listed in Article 63. We decline to hold that a violation of the Surplus Lines Act or the mere failure of an insurer to promptly deliver a copy of the insurance policy to the insured constitutes an unfair or deceptive practice or act as a matter of law.

**[5]** Having decided that a mere failure to promptly deliver a copy of the insurance policy to the insured is not a *per se* unfair or deceptive act, we now consider whether this failure combined with plaintiff's evidence concerning Stacy Fields' misrepresentations about the terms of the policy constitute an unfair or deceptive act for purposes of N.C. Gen. Stat. § 75-1.1.

"A practice is unfair if it is unethical or unscrupulous[.]" *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). A practice is deceptive "if it has a tendency to deceive," *id.*, but "proof of actual deception is not required." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). The question of what constitutes an unfair or deceptive trade practice is an issue of law. *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 363, 533 S.E.2d 827, 830, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 93 (2000). If the material facts are not disputed, the court should determine whether the defendant's conduct constituted an unfair or deceptive trade practice. *Id.*

The evidence of record, viewed in plaintiff's favor, shows that Blackmon submitted an application for event cancellation and abandonment insurance, on which she checked boxes indicating that, "if available[,]" plaintiff sought coverage for loss of net income, adverse weather, and reduced attendance. Stacy Fields erroneously told Blackmon that the sole distinction between the basic coverage and the adverse weather coverage was that with basic coverage, only the stadium manager had the authority to cancel or suspend an event due to adverse weather. While defendants did not promptly provide Blackmon with a copy of the policy that she purchased, prior to Blackmon's purchase of the policy, defendants provided her with a proposal for the policy that expressly stated that the coverage was

"for Non Refundable costs and expenses only (i.e. no cover for profits)." Ultimately, defendants provided plaintiff with coverage for an interruption caused by adverse weather, even though plaintiff only purchased the basic coverage; however, as clearly expressed in the policy proposal, defendants refused to provide coverage for lost profits. Viewed in the light most favorable to plaintiff, we conclude that defendants' actions in representing the terms of the policy were neither unfair nor did they have a tendency to deceive. This is particularly so given that defendants ultimately provided plaintiff with the adverse weather coverage, the terms of which plaintiff alleges were misrepresented by Fields. As such, plaintiff has failed to establish a necessary element of a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. Accordingly, the trial court did not err in granting summary judgment in favor of defendants with respect to this claim. This assignment of error is overruled.

### III. Bad Faith

[6] Finally, plaintiff contends that the trial court erred in granting summary judgment to defendants on plaintiff's bad faith claim. We disagree.

"In order to recover punitive damages for the tort of an insurance company's bad faith refusal to settle, the plaintiff must prove (1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct." *Lovell v. Nationwide Mutual Ins. Co.*, 108 N.C. App. 416, 420, 424 S.E.2d 181, 184, *aff'd in part, dismissed in part,* 324 N.C. 682, 435 S.E.2d 71 (1993).

As previously discussed, plaintiff did not forecast evidence tending to establish a valid claim under the policy, as there was no evidence that the 35-minute interruption resulted in the type of loss that was covered under the terms of the policy. As such, the undisputed evidence of record does not satisfy any of the elements of a bad faith claim. The trial court did not err in granting summary judgment in favor of defendants with respect to this claim. This assignment of error is overruled.

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

Judges BRYANT and STEPHENS concur.