UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CAROLYN GORDON, Class
representative in the matter of
Campbell et al. v. J. Kim Institute
of Taekwon Do, Incorporated,
                    *Plaintiff-Appellant,*

v.

HARTFORD FIRE INSURANCE COMPANY,
                    *Defendant-Appellee.*

No. 03-2411

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-03-632-8-AW)

Argued: June 2, 2004

Decided: July 23, 2004

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

___

Affirmed by unpublished per curiam opinion.

___

**COUNSEL**

**ARGUED:** Jo Ann P. Myles, Largo, Maryland, for Appellant. Doug-
las R. M. Nazarian, HOGAN & HARTSON, Baltimore, Maryland,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellant Carolyn Gordon serves as the class representative of Taekwon Do lesson purchasers who prevailed in a state court default judgment against the providers of karate services for breach of contract and numerous intentional torts. Gordon subsequently sued the providers' insurer in state court in order to collect the judgment. Gordon sought a declaratory judgment entitling the class to payment as a third-party beneficiary of the insurance, as well as recovery for violation of the common law duty of good faith and fair dealing, breach of contract, and other related claims. The insurer removed to federal court. The district court held that the surety bond and comprehensive general liability policy held by the insured did not cover the various intentional actions that formed the basis of the state court default judgment. For the reasons that follow, we affirm the judgment.

I.

Gordon is the class representative for purchasers of lessons from the J. Kim Institute of Taekwon Do, Inc. ("JKI") in a suit against JKI's insurer Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford"). The present lawsuit arises out of an attempt to enforce a judgment obtained in a previous suit in state court. In September 1992, Gordon filed a complaint on behalf of the class in Maryland state court against JKI, its CEO Bobby Jae Kim, and American Credit Management Corporation (collectively the "*Campbell* defendants"). *See* Order of Default, *Campbell v. J. Kim Institute of Taekwon Do, Inc.*, No. CAL 92-17181 (Circuit Court for Prince George's County, Maryland, Oct. 27, 1992). Gordon claimed that the *Campbell* defendants sold the class members contracts for Taekwon Do lessons, but that the *Campbell* defendants misrepresented the nature of the lessons, never taught them, and subsequently engaged in wrongful debt collection practices by falsely

reporting the delinquency of class members to credit agencies. In that action Gordon raised a myriad of claims including breach of contract, fraud, invasion of privacy, harassment, conspiracy, and defamation of Gordon herself.

In October 1992, the state court entered an "order of default" against the *Campbell* defendants because none of them responded to the complaint. Almost one decade later, on March 1, 2002, the state court entered a proposed order that "deemed" that the class members suffered $5 million in compensatory damages and were entitled to recover $5 million in punitive damages. A damages trial followed on March 4, 2002, in which none of the *Campbell* defendants participated. On March 11, 2002, the state court entered a judgment against the *Campbell* defendants for $8 million, consisting of $3 million in compensatory and $5 million in punitive damages. This default judgment supplanted the prior proposed order.

Gordon sought payment on the $8 million judgment, but was unable to collect from the *Campbell* defendants. Therefore, Gordon sought to recover from Hartford, which served as JKI's insurer. JKI held both a surety bond and a Commercial General Liability (CGL) policy with Hartford. JKI's $188,000 surety bond was limited in its coverage to benefitting "any consumer who was damaged because of the closing or bankruptcy of [JKI's Landover Mall] facility." JKI's CGL policy provided $1 million dollars of coverage for personal and advertising injury.

Two provisions of the CGL policy are relevant to the litigation. First, the CGL policy covered "bodily injury" and "property damage" caused by an "occurrence" within the coverage territory and the policy period. The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy expressly did not apply to "bodily injury" or "property damage" that was "expected or intended from the standpoint of the insured." Second, the CGL policy covered "personal injury" and "advertising injury" caused by events arising out of the insured's business. The policy defined "advertising injury" as injury arising out of, inter alia, "[o]ral or written publication of material that violates a person's right of privacy." The policy defined "personal injury" as injury (other than bodily injury) arising out of,

*inter alia*, "[o]ral or written publication of material that slanders or libels a person," or "[o]ral or written publication that violates a person's right to privacy." However, the policy's coverage expressly excluded "personal injury . . . [a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

Upon learning of the surety bond and CGL policy, in February 1993, Gordon filed two insurance claims with Hartford. However, Hartford did not pay out on either the bond or the CGL policy to any class members. After obtaining the $8 million judgment, Gordon attempted to collect against Hartford by initiating post-judgment discovery in the *Campbell* case. In October 2002, Gordon subpoenaed Hartford for documents, copies of the surety bond and CGL policy, and Hartford's claim files. Hartford initially disclosed thousands of pages of documents, but Gordon was unsatisfied because some documents were redacted. Subsequently, Hartford refused to submit to further discovery proceedings, and Maryland state courts have declined to compel Hartford to participate through the imposition of sanctions.

On December 9, 2002, Gordon filed a declaratory judgment action against Hartford and the *Campbell* defendants in Maryland state court. In the amended complaint, appellant sought: (1) a declaratory judgment that the surety bond and the CGL policy cover the *Campbell* judgment and that appellant is a third-party beneficiary entitled to payment of the $8 million judgment from Hartford; (2) damages from Hartford for violation of the common law duty of good faith and fair dealing for the refusal to pay the *Campbell* judgment; (3) damages from Hartford for breach of contract for failure to pay the *Campbell* judgment; and (4) damages from Hartford on a promissory estoppel claim.

On March 6, 2003, Hartford removed Gordon's action to federal district court. Gordon responded by filing a motion for remand, and Hartford filed a Rule 12(b)(6) motion to dismiss Gordon's complaint. With this motion, Hartford attached a copy of the complaint in the *Campbell* suit, the surety bond, and a twelve-page summary of the insured's CGL policy. Because Gordon was pursuing post-judgment discovery in state court, she filed a motion to stay the district court proceedings so that she could complete the state court discovery.

On July 31, 2003, the district court denied Gordon's motions for remand and to stay the proceedings. The district court then found that Gordon's claims were all against Hartford and not the insured *Campbell* defendants. It thus dismissed the *Campbell* defendants from the suit under the fraudulent joinder doctrine. With the Campbell defendants dismissed, complete diversity was present. The district court held that neither the bond nor the CGL policy covered the allegations in the *Campbell* complaint. Therefore, the court found that Hartford had no duty to cover the damages award against the *Campbell* defendants and granted Hartford's motion to dismiss the complaint for failure to state a claim. Gordon now appeals.

## II.

We review de novo questions of subject matter jurisdiction, including those related to the propriety of removal and fraudulent joinder. *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). We also review de novo the district court's decision to dismiss the complaint. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). We may affirm the dismissal if it appears beyond doubt that Gordon can prove no set of facts in support of her claim that would entitle her to relief. *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997).

## III.

We first address whether the district court properly asserted jurisdiction over the case and rejected Gordon's motion to remand the case to state court. To resolve this question we must determine whether Hartford's notice of removal was submitted in a timely fashion and whether diversity jurisdiction existed.

## A.

The removal statute, 28 U.S.C. § 1446(b), provides that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Maryland law

requires out-of-state insurance companies who offer insurance in Maryland to have the Maryland Insurance Administration ("MIA") serve as their statutory agent for the delivery of complaints. *See* Md. Code Ann., Ins. § 4-107 (2003).

Here Gordon asserts that she delivered the summons and complaint to MIA on February 3, 2003. Gordon claims that the thirty-day time frame for a notice of removal began on this date. Since Hartford submitted its notice to remove to federal court on March 6, 2003, Gordon asserts that Hartford missed the deadline laid out in 28 U.S.C. § 1446(b) by one day. Therefore, Gordon argues that the district court lacked jurisdiction and should have remanded the case back to state court.

Gordon simply misconstrues when the thirty-day time frame for a notice of removal begins. No court of appeals has addressed the question of whether the thirty-day period for submitting a notice of removal in 28 U.S.C. § 1446(b) is triggered by a statutory agent's receipt of service. However, the overwhelming majority of district courts to consider the question have held that "[w]hen service is effected on a statutory agent, rather than on an agent appointed by the defendant, the time to remove the action to federal court does not start to run until the defendant actually has received a copy of the complaint." *Lilly v. CSX Transp., Inc.*, 186 F. Supp. 2d 672, 673 (S.D. W.Va. 2002); *see also Hibernia Cmty. Dev. Corp. v. U.S.E. Cmty. Servs. Group, Inc.*, 166 F. Supp. 2d 511, 513 (E.D. La. 2001); *Auguste v. Nationwide Mut. Ins. Co.*, 90 F. Supp. 2d 231, 232 (E.D.N.Y. 2000); *Monterey Mushrooms, Inc. v. Hall*, 14 F. Supp. 2d 988, 991 (S.D. Tex. 1998); *Skidaway Assocs., Ltd. v. Glens Falls Ins. Co.*, 738 F. Supp. 980, 982 (D.S.C. 1990).

While the statutory agent received the complaint on February 3, 2003, Hartford's registered contractual agent for service of process, CT Corporation System, did not receive the service from MIA until February 7, 2003. It notified Hartford of the complaint's existence on that date. The time for removal begins when "the defendant actually has received a copy of the complaint." *Lilly*, 186 F. Supp. 2d at 673. Therefore, Hartford's March 6, 2003 notice of removal clearly falls within the thirty-day time frame laid out by 28 U.S.C. § 1446(b), and

the district court properly found that Hartford submitted its notice of removal in a timely way.

B.

The remaining jurisdictional issue involves the presence of complete diversity. To establish diversity jurisdiction, each defendant must be a citizen of a different state from each plaintiff. 28 U.S.C. § 1332(a). Under the fraudulent joinder doctrine, however, if nondiverse defendants were added to a suit improperly, a district court may dismiss the nondiverse defendants and assume jurisdiction over the case. *Mayes*, 198 F.3d at 461. "'[T]o establish that a nondiverse defendant has been fraudulently joined, the removing party must establish . . . [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

Gordon contends that there was not complete diversity in this case. Since both the *Campbell* defendants and the class members are indisputably Maryland residents, Gordon asserts the diversity requirement is not satisfied. She argues that the *Campbell* defendants were properly named in the suit, because they were the parties to the Hartford surety bond and CGL policies that are at the center of the complaint.

We disagree. As the district court observed, each count of the complaint pertains solely to Hartford's alleged failure to pay out under the surety bond and CGL policy. Gordon seeks no relief whatsoever from the *Campbell* defendants in this suit. Gordon has already successfully pursued a state court claim against the *Campbell* defendants, which addressed her claims against them. Ironically, if the *Campbell* defendants had any role at all as parties in this case, it would likely be as *plaintiffs* to attempt to collect from Hartford to reduce their own obligations. There appears to be no reason to include the *Campbell* defendants in this lawsuit, other than to defeat diversity jurisdiction. The district court therefore properly dismissed these parties based on the doctrine of fraudulent joinder, and it correctly rejected Gordon's motion to remand to state court.

IV.

We now turn to the question of whether the district court properly dismissed the complaint. As noted, Gordon argues that the district court erred in dismissing her complaint, because both the surety bond and the CGL policy covered her claims. Gordon's complaint against Hartford sought (1) a declaratory judgment establishing that the class was a third party beneficiary to the insurance agreements and thus entitled to payment from Hartford; (2) recovery for Hartford's violation of the common law duty of good faith and fair dealing; (3) recovery from Hartford for breach of contract; and (4) recovery from Hartford on the basis of promissory estoppel.

We first consider the declaratory judgment count. Here the district court based its decision to dismiss the complaint on consideration of the *Campbell* complaint, the surety bond, and the CGL policy.\**See New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994). Gordon's complaint referenced these documents, and the *Campbell* complaint and the subsequent $8 million judgement formed the underlying basis of the damages sought through the declaratory judgment action. According to Maryland law, "[a] judgment by default constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint." *Pacific Mortgage & Inv. Group, Ltd. v. Horn*, 641 A.2d 913, 923 (Md. App. 1994). Therefore, we consider the default judgment in the *Campbell* case as "'the tacit admission by the defendant[s] in default of the truth of the allegations of the bill of complaint as they are averred.'" *Porter Hayden Co. v. Bullinger*, 713 A.2d 962, 971 (Md. 1998) (quoting *Hopkins v. Easton Nat. Bank*, 187 A. 874

---

*Gordon also argues that the district court should have stayed the case pending completion of post-judgment discovery in the state court *Campbell* proceedings. Gordon argues this stay would have allowed Gordon to use the state court discovery to gather extrinsic evidence to establish the applicability of insurance coverage. However, we agree with the district court that Gordon "has not shown what relationship, if any, [the *Campbell* post-judgment discovery] issues have with the litigation in" federal court. The district court reviewed the record including all documents discussed in the complaint, and correctly concluded that there were no "compelling reasons for staying this action."

(Md. 1936)). The district court properly found that the admission of the underlying claims in the *Campbell* complaint formed the basis for the request for declaratory judgment action against the *Campbell* defendant's insurer Hartford.

The sole issue with respect to the surety bond was whether the *Campbell* claims arose out of the "closing or bankruptcy of the [Landover Mall Kim's Karate] facility." The surety bond expressly provided that it covered damages to consumers caused by the closing or bankruptcy of the Landover Mall facility, if the claim is made within one year of the expiration of the bond. Here the *Campbell* suit was filed at least sixty days before that facility was closed, and none of the claims arose out of the closing of the Landover Mall facility. In fact, nowhere in the complaint is the closing of the Landover Mall facility even mentioned. Gordon argues that claims concerning the facility's closure were informally raised and litigated during the March 4, 2002, damages phase of the *Campbell* case. However, the liability issues in the *Campbell* case had been resolved almost a decade earlier, and Gordon could not raise a new theory of liability during a hearing on damages. *See Cole v. Gales*, 423 A.2d 972, 973-74 (Md. App. 1981) (in a default judgment context, a party is limited to the damages pled, unless she amends the complaint). Therefore, the district court properly determined that damages in the *Campbell* case were not covered by the bond.

As to the CGL policy, we must address whether the policy obligated the insurer to cover the acts alleged in the *Campbell* complaint. The express terms of the CGL policy cover only negligence and bodily injury, and the CGL policy expressly excludes from coverage "bodily injury" or "property damage" that was "expected or intended from the standpoint of the insured." This provision establishes that intentional acts or torts by the insured are not covered by the CGL policy. Likewise, the policy expressly excludes from coverage "personal injury" that arises out of "oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Additionally, Maryland law does not authorize insurance coverage for intentional acts. *Mayor of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1100 n.49 (Md. App. 2002). Thus the CGL policy's coverage clearly excludes intentional conduct.

Our focus then is solely on whether the complaint alleges negligence. Contrary to Gordon's assertions, the overarching theme of the *Campbell* claims was limited to intentional acts. Count I alleges breach of contract, and no provision of the CGL policy covers this type of claim. Count II alleges the intentional torts of misrepresentation and fraud, and the substance of Count III entails a litany of intentional torts, which are clearly excluded from the policy's coverage. The defamation claims in Count IV were specifically excluded from the default judgment by the state court and are therefore not before this court.

It is true, as Gordon stresses, that Count III of the *Campbell* complaint mentions the word "negligence" in its title, along with several intentional torts. This count details how the *Campbell* defendants engaged in a conspiracy to defame, harass, and provide malicious credit information about Gordon and other members of the class. In the context of discussing this conspiracy, this count asserts that the *Campbell* defendants negligently failed to record payments for services made by class members, and negligently reported the supposedly delinquent payments to credit reporting agencies and other parties. *Campbell* Complaint ¶¶ 50, 55. The suit also discusses general "misrepresentations" without specifying whether it refers to intentional or negligent conduct.

Although these vague references give some hint of negligent conduct, the substance of this count entails intentional misconduct by the *Campbell* defendants in implementing a conspiracy against Gordon and other members of the class. *See Golden First Mortgage Corp. v. Berger*, 251 F. Supp. 2d 1132, 1141 (E.D.N.Y. 2003) (dismissing negligence claim where "complaint is permeated with allegations of intentional conduct rather than negligence"). The count discusses how the *Campbell* defendants "engaged in unlawful combination, conspiracy, and course of conduct pursuant to which Defendants defamed, harassed and provided malicious credit information." *Campbell* Complaint ¶ 45. It states these actions were "performed wantonly, willfully and maliciously, in total disregard of the Classes' rights." *Campbell* Complaint ¶ 53. The count further asserts that the Campbell defendants "improperly and maliciously provided erroneous and defamatory information to local and national credit agencies." *Campbell* Complaint ¶ 56. The *Campbell* defendants' alleged willful and mali-

cious acts appear clearly intended, and any negligence appears merely incidental to the intentional misconduct. Therefore, the district court properly found that all of the claims against the *Campbell* defendants entailed intentional acts outside of the scope of the CGL policy. The court further correctly dismissed the declaratory judgment count because the allegations contained in the *Campbell* complaint are not covered by either the surety bond or the CGL policy.

Finally, since Hartford had no obligation to pay Gordon under the surety bond or CGL policy, Gordon's claims against Hartford concerning violation of the common law duty of good faith and fair dealing or breach of contract simply lack any merit. The district court properly dismissed these counts based on its dismissal of the declaratory judgment count. And the district court also was correct to reject Gordon's promissory estoppel claim because, under Maryland law, "waiver or estoppel may occur only when it does not create new coverage." *Allstate Ins. Co. v. Reliance Ins. Co.*, 786 A.2d 27, 32 (Md. App. 2001) (internal citation and quotations omitted). Here, since there was never any policy coverage for the claims underlying the *Campbell* judgment, the promissory estoppel claim also fails.

## V.

We have reviewed the remaining assignments of error and find them without merit. For all of the foregoing reasons, we affirm the judgment.

*AFFIRMED*