**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1421**

LORETTA T. ELLIOTT,

        Plaintiff - Appellant,

    v.

AMERICAN STATES INSURANCE COMPANY,

        Defendant - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:16-cv-01175-NCT-JEP)

Argued:  December 6, 2017                  Decided:  February 20, 2018

Before MOTZ, AGEE, and FLOYD, Circuit Judges.

Affirmed by published opinion.  Judge Floyd wrote the opinion in which Judge Motz and Judge Agee joined.

**ARGUED:** James Harold Hughes, HUGHES LAW, PLLC, Durham, North Carolina; James Bruce Hoof, BRUCE HOOF LAW, Durham, North Carolina, for Appellant. William Walton Silverman, WALL TEMPLETON & HALDRUP, PA, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** J. Mark Langdon, Robin A. Seelbach, WALL TEMPLETON & WALDRUP, PA, Raleigh, North Carolina, for Appellee.

FLOYD, Circuit Judge:

Loretta Elliott filed this claim against her insurance company, American States Insurance Company ("ASIC"), alleging that its conduct in handling her insurance claim constitutes an unfair claims settlement practice in violation of N.C. Gen. Stat. § 58-63-15(11), and, as a matter of law, an unfair and deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1. On appeal, Elliott asserts that the district court erroneously denied her motion to remand based on ASIC's alleged untimely filing for notice of removal, arguing that the period for filing commences when a statutory agent is served. She also asserts that diversity jurisdiction does not exist because the case should be properly treated as a "direct action" within the meaning of 28 U.S.C. § 1332(c)(1). Last, Elliott argues that the district court erroneously granted ASIC's Rule 12(b)(6) motion to dismiss for failure to state a claim. For the following reasons, we affirm.

I.

On January 16, 2013, Elliott was in an automobile accident with Michael Jones. Elliott suffered serious, painful, and permanent bodily injuries as a result of the accident. At the time of the accident, Elliott's vehicle was insured by ASIC. Her policy included underinsured motorist ("UIM") coverage of $100,000, less any amount she recovered under another policy.[1] Jones had liability coverage up to $30,000 with State Farm

---

[1] North Carolina law defines the term "underinsured highway vehicle" as:

> a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability

Insurance Company ("State Farm"). Elliott submitted a settlement demand package to State Farm, alleging $234,847 in total damages and alleging that Jones's negligence caused the accident. State Farm paid her the policy limit of $30,000. Elliott submitted the same claim to ASIC with a settlement demand to recover the $70,000 limit in UIM benefits remaining under her policy. ASIC declined to make any offer to settle the claim. In response, Elliott advised ASIC that she was "compelled to institute litigation to recover amounts due" under her UIM policy. J.A. 71.

On October 8, 2014, Elliott initiated a lawsuit to recover damages against Jones ("*Elliott v. Jones*") in Superior Court in Durham County, North Carolina, and ASIC exercised its statutory right as a UIM carrier to defend the *Elliott v. Jones* lawsuit as an unnamed party. The lawsuit was referred to arbitration, in accordance with Elliott's insurance policy,[2] and an arbitration hearing was held on February 2, 2016. Elliott alleges that ASIC made "token offers" to settle at some point between the filing of the lawsuit and the arbitration hearing, and that these offers were "substantially less than the

bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C. Gen. Stat. § 20-279.21(b)(4).

[2] Elliott's policy provides that "the Insured may demand to settle [] disputed issues by arbitration," including any disagreement as to "[w]hether the Insured is legally entitled to recover compensatory damages from the owner or operator of an . . . underinsured motor vehicle," or "[a]s to the amount of such compensatory damages[.]" J.A. 62 (Am. States Policy Pt. C2, "ARBITRATION", at 12).

3

amount of UIM coverage ultimately recovered . . . ." J.A. 19. Elliott rejected these offers. On February 9, 2016, an arbitration award was rendered in Elliott's favor in the amount of $90,000 plus prejudgment interests and costs. On March 1, 2016, in accordance with the arbitration award, the Superior Court entered a judgment in *Elliott v. Jones* for Elliott in the amount of $68,010.17, after deducting the $30,000 which State Farm had already paid. ASIC subsequently paid the full amount of this judgment.

Elliott then instituted this action against ASIC in Superior Court in Durham County, North Carolina, alleging that ASIC's handling of her UIM claim—specifically, forcing her to initiate arbitration in order for ASIC to settle the claim—constituted an unfair claims settlement practice in violation of N.C. Gen. Stat. § 58-63-15(11), and thus, as a matter of law, an unfair and deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1. She further asserts that she is entitled to recover damages from ASIC for this violation pursuant to N.C. Gen. Stat. § 75-16. Elliott served the summons and complaint on the Commissioner of Insurance of North Carolina (the "Commissioner"), ASIC's statutorily required agent for service of process; the Commissioner accepted service via certified mail on August 12, 2016. On August 24, 2016, ASIC received the summons and complaint from the Commissioner. On September 23, 2016, ASIC removed the action to the United States District Court for the Middle District of North Carolina on the basis of diversity jurisdiction. ASIC filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and Elliott filed a motion to remand on the basis of both untimely filing for removal and lack of diversity jurisdiction. The district court subsequently denied Elliott's motion to

4

remand and granted ASIC's motion to dismiss. This appeal followed.

On appeal, Elliott raises three distinct arguments. First, she asserts that the district court erred in denying her motion to remand because she claims that ASIC's filing for removal was untimely. At issue is when the filing period commences if the defendant's statutory agent for service of process is served instead of the defendant. Second, Elliott asserts that the district court erred in determining that the parties were diverse and argues that federal jurisdiction does not exist. Here, she argues that this action by an insured against her insurance company is a "direct action" within the meaning of 28 U.S.C. § 1332(c)(1), and thus that ASIC should be deemed to be a resident of the state in which she is a resident, which would destroy complete diversity and eliminate the subject matter jurisdiction of a federal court. Finally, she asserts that the district court erred in granting ASIC's motion to dismiss for failure to state a claim upon which relief can be granted. We reject each of these claims in turn.

## II.

We first address Elliott's assertion that the district court erroneously denied her motion to remand after incorrectly determining that ASIC timely filed notice of removal. Elliott argues that ASIC's period for filing for removal began when she served the Commissioner because the Commissioner was not simply ASIC's statutory agent and that, even if he were, the removal period begins when a statutory agent is served rather than when the defendant actually receives the complaint. Elliott's claims have no merit.

We review questions of subject matter jurisdiction de novo, including a district

5

court's denial of a motion to remand. *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). Doubts about the propriety of removal should be resolved in favor of remanding the case to state court and in doing so, removal statutes must be strictly construed. *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc).

A.

Before addressing the question of when the period for filing commences when a statutory agent is served, we must consider whether ASIC's agent for service of process was a statutory agent.

A "statutory agent" is "[a]n agent designated by law to receive litigation documents and other legal notices for a nonresident corporation." Black's Law Dictionary (10th ed. 2014). An "agency by operation of law" is "[a]n agency that arises under circumstances specified by law without mutual consent between the principal and the agent having been manifested." *Id.* Conversely, a "process agent" or "registered agent" is defined as "a person authorized to accept service of process on behalf of another."

In order to do business in North Carolina, North Carolina law requires that all foreign or alien insurance companies, including ASIC, file an instrument appointing the Commissioner of Insurance of North Carolina as the company's agent for service of process. N.C. Gen. Stat. § 58-16-5.[3] In complying with this statutory requirement,[4]

---

[3] N.C. Gen. Stat. § 58-16-5 provides that "[a] foreign or alien insurance company may be licensed to do business when it: . . . (10) Files with the Commissioner [of Insurance of North Carolina] an instrument appointing the Commissioner as the

6

ASIC's Board of Directors adopted a resolution nominating the Commissioner as its agent to accept service of process.[5] Elliott contends that ASIC's resolution appointing the Commissioner as its agent for service of process demonstrates that ASIC authorized the Commissioner in this role such that the Commissioner is a registered agent rather than a statutory agent. This argument is unavailing, as the statute plainly requires this appointment. It is also irrelevant that ASIC's resolution states that it "expressly agree[s] that any and all lawful processes against it which may be served upon said Insurance Commissioner, or his successor, shall be deemed valid personal service upon said company and shall be the same force and validity as if served upon said company," J.A. 85, because the statute required the same, *see* N.C. Gen. Stat. § 58-16-5 ("service upon the Commissioner is sufficient service upon the company"). Thus, the record does not

---

company's agent on whom any legal process under G.S. 58-16-30 may be served. This appointment is irrevocable as long as any liability of the company remains outstanding in this State. A copy of this instrument, certified by the Commissioner, is sufficient evidence of this appointment; and service upon the Commissioner is sufficient service upon the company."

[4] ASIC is a corporation organized under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts.

[5] The appointment provides that "American States Insurance Company . . . does hereby make, constitute, and appoint the Insurance Commissioner of the State of North Carolina, or his successor in office, its true and lawful attorney in and for said State of North Carolina, upon whom all processes of law against said corporation in any action or legal proceeding may be served . . . and said company does hereby expressly agree that any and all lawful processes against it which may be served upon said Insurance Commissioner, or his successor, shall be deemed valid personal service upon said company and shall be the same force and validity as if served upon said company . . . ." J.A. 85.

7

indicate that ASIC provided the Commissioner with any agency or authority to act on its behalf in any way other than what was required under North Carolina law.

Because North Carolina law requires ASIC to appoint and authorize the Commissioner as its agent for service of process as a condition of writing insurance in the state, and because this was the only authority ASIC provided the Commissioner, we conclude that the Commissioner was merely ASIC's statutory agent for service of process.

B.

Having concluded that the Commissioner is a statutory agent, we now consider whether the filing period commences when the statutory agent is served, as Elliott argues, or when the defendant receives the complaint, as ASIC argues.

The relevant removal statute provides that:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b). In this case, Elliott formally served ASIC by serving the Commissioner, ASIC's statutory agent for service of process, simultaneously with the summons and complaint via certified mail. The Commissioner accepted the service on August 12, 2016. ASIC actually received the summons and complaint from the Commissioner on August 24, 2016. ASIC filed its notice of removal on September 23, 2016. Thus, ASIC removed the action more than thirty days from service on the

8

Commissioner, but less than thirty days from when ASIC actually received the complaint from the Commissioner. Elliott argues that the 30-day time frame for filing notice of removal began when she served the Commissioner, and that ASIC therefore missed the removal deadline laid out in § 1446(b). Consequently, she argues, the district court should have remanded the case back to state court.

The general rule, as established by the Supreme Court in *Murphy Brothers*, is that the time for counting the days for filing notice of removal under § 1446(b) starts when the defendant is formally served with the summons and complaint making the defendant an official party to the action and requiring the defendant to appear. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (holding that defendant's informal receipt of the complaint did not start the time for filing). However, the parties do not cite and we have not found published authority in this circuit or any other addressing whether the 30-day period for filing notice of removal in § 1446(b) is triggered by service on a statutory agent.

We have, however, had occasion to address this question in an unpublished opinion. In *Gordon v. Hartford Fire Insurance Company*, as here, the defendant filed notice of removal within 30 days of actually receiving the complaint, but not within 30 days of service on its statutory agent for service of process. 105 F. App'x 476, 480 (4th Cir. 2004). Rejecting the plaintiff's contention that the case should have been remanded for untimely filing for notice of removal, we stated that "the overwhelming majority of district courts to consider the question have held that '[w]hen service is effected on a statutory agent, rather than on an agent appointed by the defendant, the time to remove

9

the action to federal court does not start to run until the defendant actually has received a copy of the complaint.'" *Id.* (quoting *Lilly v. CSX Transp., Inc.*, 186 F. Supp. 2d 672, 673 (S.D. W. Va. 2002)) (citations omitted). In so doing, we recognized a statutory agent exception to the *Murphy* Rule and held that when a statutory agent is served, the time to remove the case runs from the defendant's actual receipt of the complaint. *See id.* at 480–81. Indeed, as we noted in *Gordon*, the vast majority of district courts to have considered this issue agree with this approach. *Id.* at 480; *see also Tucci v. Hartford Fin. Servs. Grp., Inc.*, 600 F. Supp. 2d 630, 632 n.3, 632–33 (D.N.J. 2009) (collecting cases and stating that it is the "well-established rule that the removal period begins not with service on a statutory agent, but with receipt by defendants or their true agent"); 14C Charles Alan Wright, et al., *Federal Practice and Procedure* § 3731 (4th ed. Apr. 2017) ("At one time it was not clear whether service on a statutory agent . . . was sufficient to commence the time period for removal . . . . Realistically speaking, of course, statutory agents are not true agents but merely are a medium for transmitting the relevant papers. Accordingly, it now appears to be settled law that the time for removal begins to run only when the defendant or someone who is the defendant's agent-in-fact receives the notice via service, as prescribed in the *Murphy Brothers* case.").

Elliott disagrees with the majority approach and instead argues that the plain language of § 1446(b) and the Supreme Court's interpretation of this statute require holding that the filing period commences when the defendant is formally served, and that it makes no difference that service was on a statutory agent. *See* § 1446(b); *Barbour*, 640 F.3d at 605 (stating, in a multi-defendant removal case, that "[i]f a case involves a single

10

defendant, the operation of § 1446(b) is straightforward. The defendant must file the notice of removal within thirty days of service."). However, Elliott does not cite and we cannot find a single controlling case involving service on a statutory agent that supports her view. Additionally, we find her argument about the plain meaning of the statute unavailing, as the statute itself says nothing about service on a statutory agent. *See* § 1446(b) (defendant must file for removal "within 30 days after the *receipt by the defendant*, through service or otherwise, of a copy of the initial pleading" (emphasis added)).

Although we believe a straightforward reading of the statute supports holding that the 30-day period for submitting notice of removal in § 1446(b) is not triggered by service on a statutory agent, our understanding of the congressional intent of this statute also informs our analysis. *See Medina v. Wal-Mart Stores, Inc.*, 945 F. Supp. 519, 520 (W.D.N.Y. 1996) ("A strict reading of [§ 1446(b)] supports the position that the thirty-day period does not begin to run until the defendant actually receives a copy of the pleadings."). It is clear that the congressional intent in enacting and amending § 1446(b) was to provide the defendant with adequate time to consider filing for removal, and to create uniform time limits for responding to a complaint. *See Murphy Bros.*, 526 U.S. at 354 (stating that its interpretation of § 1446(b) as requiring formal service on the defendant to commence the 30-day removal period "adheres to tradition . . . and assures defendants adequate time to decide whether to remove an action to federal court"); H.R. Rep. No. 80-308, at A135 (1947) (stating that § 1446(b)'s revisions "will give adequate time and operate uniformly throughout the Federal jurisdiction"). As originally enacted,

11

§ 1446(b) attempted to provide uniform removal periods by requiring that "[t]he petition for removal of a civil action or proceeding may be filed within twenty days after commencement of the action or service of process, whichever is later." Act of June 25, 1948, Pub. L. No. 80-773, § 1446(b), 62 Stat. 869, 939. Under the original version of the statute, however, disparities in time limits still existed between the states because states defined "commencement of the action" differently. In some states, the period for filing for removal could expire before the defendant obtained the complaint or before the complaint was ever filed. For example, in New York, a plaintiff could commence an action by service of the summons, without ever serving or filing a complaint, allowing the time limit for filing notice of removal to expire before the complaint was even filed. *See Shoemaker v. GAF Corp.*, 814 F. Supp. 495, 497 (W.D. Va. 1993) (describing the "New York Rule" for commencing a suit). To reduce this disparity, in 1949, Congress amended § 1446(b), providing, in part, that the defendant must file notice of removal "within twenty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ." Act of May 24, 1949, Pub. L. No. 81-72, § 83(a), 63 Stat. 89, 101; S. Rep. No. 81-303, at 6 (1949). Additionally, Congress amended § 1446(b) in 1965 to extend the time for filing from 20 days to 30 days, providing the defendant more time to consider filing for removal. Act of Sept. 29, 1965, Pub. L. No. 89-215, 79 Stat. 887, 887; S. Rep. No. 89-712, at 2 (1965).

Serving a statutory agent does not guarantee that the defendant is provided with actual notice of the complaint or adequate time to decide whether to remove a case. To hold that the filing period commences when the statutory agent is served, therefore,

12

would allow for the filing deadline to pass before the defendant actually receives a copy of the complaint—the exact situation Congress previously sought to avoid when it amended § 1446(b) to its current state. *See Tucci*, 600 F. Supp. 2d at 634 ("To find to the contrary would contravene Congress' intent to ensure that defendants know that they are the subject of a suit and as well as the basis for the suit *before* the removal period begins." (citing *Murphy Bros.*, 526 U.S. at 351–52) (emphasis in original)); *Lilly*, 186 F. Supp. 2d at 674 ("If the removal period began running upon receipt of the complaint by the statutory agent, the privilege of a defendant to remove could be easily curtailed or abrogated completely." (internal quotation marks omitted)). We agree that "the defendant's right to a federal forum should not depend upon the rapidity and accuracy with which the statutory agent informs its principal of the commencement of litigation against it." *Medina*, 945 F. Supp. at 521; *see also Elliott v. Wal-Mart Inc.*, No. 97-3526, 1998 WL 385911, at *2 (6th Cir. July 2, 1998) (unpublished) (declining to reverse a default judgment motion when defendant did not receive a copy of the complaint that was served on its statutory agent and then misfiled by Wal-Mart's switchboard operator because "[i]t was Wal-Mart's own choice to rely on its switchboard operator to sort and file incoming legal documents"); *Youren v. State Farm Mut. Auto. Ins. Co.*, No. 2:14-CV-00117-JAD, 2014 WL 2772105, at *2 (D. Nev. June 18, 2014) ("Conditioning a defendant's removal right on the actions of an agent who the defendant did not choose would place the defendant at the mercy of the diligence of the agent and the postal service.").

Consequently, we now hold that service on a statutory agent is not service on the

13

defendant within the meaning of § 1446(b). Here, ASIC received the complaint on August 24, 2016, and filed notice of removal on September 23, 2016, within the 30-day time period provided in § 1446(b). Therefore, the district court did not err in determining that ASIC timely filed notice of removal and in denying Elliott's motion for remand based on her allegations of untimely filing.

## III.

We next address Elliott's assertion that the district court erred in determining that diversity jurisdiction exists and denying her motion to remand to state court. We review questions of subject matter jurisdiction de novo. *Mayes*, 198 F.3d at 460. Specifically, Elliott contends that this action by an insured against her insurance company is a "direct action" within the meaning of 28 U.S.C. § 1332(c)(1), such that ASIC must be deemed a resident of the state in which she is a resident, destroying complete diversity and making removal improper. We disagree.

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between parties of completely diverse state citizenship, that is, no plaintiff may be a citizen of the same state as any defendant, and the amount in controversy must exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). The relevant statute provides that:

> a corporation shall be deemed to be a citizen of every State and foreign
> state by which it has been incorporated and of the State or foreign state

14

where it has its principal place of business, except that *in any direct action against the insurer of a policy or contract of liability insurance*, whether incorporated or unincorporated, *to which action the insured is not joined as a party-defendant*, *such insurer shall be deemed a citizen of*—(A) *every State and foreign state of which the insured is a citizen . . . .*

§ 1332(c)(1) (emphases added). Elliott asserts that the plain language of the statute compels the conclusion that an action brought by an insured against his or her insurer is a direct action because it is an action against the insurer in which the insured is not joined as a party defendant. She contends that if Congress wanted to exclude actions such as this one from being direct actions under the meaning of § 1332(c)(1), it could have expressly provided for the exception.

The term "direct action" is not defined in the relevant statute, nor has this Court ruled on its meaning in § 1332(c)(1). However, every circuit to have considered this issue has held that a "direct action" in § 1332(c)(1) does not include an insured's suit against his or her own insurer for breach of the terms of the insurance policy or the insurer's own alleged tortious conduct. *See, e.g.*, *Ljuljdjuraj v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 908, 913 (6th Cir. 2014); *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 511 n.2 (7th Cir. 2008) (holding that an insured's suit against its own insurer for failure to settle a claim in good faith was not a "direct action"); *Chevalier v. Reliance Ins. Co. of Ill.*, 990 F.2d 625, 625 (5th Cir. 1993) (unpublished); *Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 675 (2d Cir. 1992); *McGlinchey v. Hartford Accid. & Indem. Co.*, 866 F.2d 651, 653 (3d Cir. 1989); *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 847 (10th Cir. 1988), *cert. denied*, 489 U.S. 1080 (1989); *Fortson v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985); *Beckham v. Safeco Ins.*

15

*Co. of Am.*, 691 F.2d 898, 902 (9th Cir. 1982) (holding that an insured's bad faith suit against her insurer was not a "direct action" since it was based on the insurer's own tortious conduct); *White v. U. S. Fid. & Guar. Co.*, 356 F.2d 746, 748 (1st Cir. 1966).

Instead, our sister circuits have concluded that a "direct action" under § 1332(c)(1) refers to "a tort claim in which the insurer essentially stands in the shoes of its legally responsible insured . . . ." *Rosa*, 981 F.2d at 677; *see also Searles v. Cincinnati Ins. Co.*, 998 F.2d 728, 729 (9th Cir. 1993) ("[U]nless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action." (internal quotation marks omitted)). We now join our sister circuits and hold that "direct action" in § 1332(c)(1) does not include an insured's suit against his or her own insurer for breach of the terms of the insurance policy or the insurer's own alleged tortious conduct.

Elliott brought this action as an insured person against ASIC, her insurance company, alleging an unfair or deceptive practice in the settling of insurance claims in violation of state law. This is not a direct action within the meaning of § 1332(c)(1) and, therefore, § 1332(c)(1)'s residency determination for direct action suits does not apply. Elliott is a North Carolina resident and ASIC is a corporation organized under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts, thus satisfying § 1332(a)(1)'s complete diversity requirement. As the parties agree, the amount in controversy is also satisfied. *See* § 1332(a)(1). Therefore, diversity jurisdiction exists and the district court did not err in denying Elliott's motion for remand based on an alleged lack of subject matter jurisdiction.

16

IV.

Finally, we address Elliott's assertion that the district court erred in granting ASIC's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. ASIC contends that Elliott failed to plead facts that plausibly state a claim that ASIC's conduct constituted an unfair or deceptive practice in the settling of insurance claims in violation of state law. Finding no error, we affirm.

We review de novo a district court's Rule 12(b)(6) dismissal. *Mayes*, 198 F.3d at 460. To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a 12(b)(6) dismissal, we construe factual allegations in the nonmoving party's favor, treating them as true, and we will affirm a dismissal for failure to state a claim only if it appears that the plaintiffs would not be entitled to relief under any facts which could be proved in support of their claim." *Mayes*, 198 F.3d at 460 (internal quotation marks omitted).

North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, prohibits unfair and deceptive acts or practices, generally, and North Carolina's "Unfair Claim Settlement Practices" statute, N.C. Gen. Stat. § 58-63-15(11), defines unfair practices in the settlement of insurance claims.[6] As relevant here, § 75-1.1

---

[6] *See* N.C. Gen. Stat. § 75-1.1(a) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are

17

provides a private cause of action for violations, whereas § 58-63-15(11) does not; instead "the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." *Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co.*, 563 S.E.2d 269, 278 (N.C. Ct. App. 2002) (internal quotation marks omitted). Thus, an individual may file an independent § 75-1.1 claim, or may file a § 75-1.1 claim that relies on a violation of § 58-63-15(11). *See Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 684 (N.C. 2000).

To establish a violation of § 58-63-15(11), a complainant must show that the defendant committed one of the enumerated unfair practices in the settlement of insurance claims, and that such conduct was committed or performed "with such frequency as to indicate a general business practice." § 58-63-15(11). To establish a claim under § 75-1.1(a), a complainant must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused injury to plaintiff. *Gray*, 529 S.E.2d at 681. "The determination of whether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." *Id.* (citation omitted). "A

---

declared unlawful."); § 58-63-15(11) ("Unfair Claim Settlement Practices.—Committing or performing with such frequency as to indicate a general business practice of any of the following: Provided, however, that no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner: . . . (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (g) Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured; (h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled . . . .").

18

practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 398 (N.C. 2007) (internal quotation marks omitted). However, "such conduct that violates [§ 58-63-15(11)] constitutes a violation of N.C.G.S. § 75-1.1, as a matter of law, without the necessity of an additional showing of frequency indicating a 'general business practice,'" because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers . . . ." *Gray*, 529 S.E.2d at 683 (holding as to violations of § 58-63-15(11)(f), specifically); *Country Club*, 563 S.E.2d at 279 (extending *Gray* to apply to all conduct described in § 58-63-15(11)).[7]

---

[7] We note that it is unclear whether conduct that violates § 58-63-15(11) is a per se violation of § 75-1.1, or instead whether that conduct satisfies § 75-1.1's conduct requirement of an unfair or deceptive act or practice, still requiring the complainant to show that the act or practice was in or affecting commerce and proximately caused injury to the plaintiff before finding a violation of § 75-1.1. *Compare Page v. Lexington Ins. Co.*, 628 S.E.2d 427, 429 (N.C. Ct. App. 2006) (reversing defendant's motion to dismiss on the § 75-1.1 claim because "[p]laintiffs' allegations, taken as true, are sufficient to establish violations of N.C.G.S. § 58-63-15(11)(b), (d), (e), and (f). Therefore, pursuant to *Gray* [529 S.E.2d 676,] and *Country Club of Johnston Cty., Inc.*, [563 S.E.2d 269,] plaintiffs stated a claim for unfair and deceptive trade practices") *and ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 125 (4th Cir. 2006) ("Because the evidence supports the jury's finding that National Union engaged in conduct violating section 58-63-15(11)(f) . . . , and because such a violation is 'inherently unfair' and a violation of the UDTPA, the district court's ruling that National Union violated the UDTPA was not erroneous."), *with Nelson v. Hartford Underwriters Ins. Co.*, 630 S.E.2d 221, 233 (N.C. Ct. App. 2006) ("[N]one of the actions . . . violated N.C.G.S. § 58-63-15(11)(a), (c), (d), (e), or (n). Therefore we conclude that plaintiffs have shown no unfair or deceptive practices . . . which would *support* a claim under N.C.G.S. § 75-1.1. Plaintiffs also cannot show how any of the actions taken by Hartford were the *proximate cause* of their injury . . . ." (emphases added)) *and Federated Mut. Ins. Co. v. Williams Trull Co.*, 838 F. Supp. 2d 370, 421 (M.D.N.C. 2011); *see generally*

Elliott's complaint alleges that ASIC violated § 58-63-15(11) by its conduct in response to her UIM claim, and that this conduct also constitutes a violation of § 75-1.1, as a matter of law.[8]  Consequently, to survive a motion to dismiss, we must find that Elliott pleaded facts that plausibly state a claim that ASIC violated § 58-63-15(11), and that in so doing, ASIC also violated § 75-1.1.  In general, Elliott argues that ASIC violated these statutes by forcing her to initiate arbitration in order to have any of her claim paid.  Specifically, Elliott contends that ASIC violated § 58-63-15(11) when it "did not attempt in good faith to effectuate a prompt, fair and equitable settlement of [her] claims in which liability had become reasonably clear," J.A. 19 (quoting § 58-63-15(11)(f)); when it "compelled [her] to institute litigation to recover amounts due under the UIM provisions of her . . . insurance policy" by first refusing to offer any amount of UIM payment and then making "token offers" preceding arbitration that were "substantially less than the amount of UIM coverage ultimately recovered," *id.* (quoting § 58-63-15(11)(g)); and when it "attempted to settle [her] claim for an amount of UIM coverage less than the amount . . . a reasonable person would have believed Elliott was

---

Matthew W. Sawchak, *Refining Per Se Unfair Trade Practices*, 92 N.C. L. Rev. 1881 (2014) (describing courts' inconsistent approaches to § 58-63-15(11)'s "per se" impact on § 75-1.1).  Because we hold that Elliott failed to plausibly state a claim that ASIC committed any of the conduct prohibited in § 58-63-15(11), however, it is unnecessary to resolve this question.

[8] Elliott could have argued that ASIC violated § 75-1.1 independently from a violation of § 58-63-15(11). *See Gray*, 529 S.E.2d at 684.  However, Elliott did not make such an argument in her complaint or in her briefs to this Court.

entitled to recover," *id.* at 20 (quoting § 58-63-15(11)(h)).  ASIC argues that Elliott failed to plausibly state a claim under either statute because state law does not mandate settlement of a UIM claim before liability is established and because, here, liability was established in arbitration and ASIC paid the arbitration award once entered. Additionally, ASIC argues that there can be no violation of § 75-1.1 because Elliott has failed to allege any injury.

UIM coverage is only triggered in certain circumstances.  Under North Carolina law, "[u]nderinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted."  N.C. Gen. Stat. § 20-279.21(b)(4).  Even once UIM liability is triggered, however, such liability is still "derivative and conditional," in that "[u]nless [the plaintiff] is 'legally entitled to recover damages' . . . from the uninsured motorist[,] the contract upon which he sues precludes him from recovering against defendant."  *Brown v. Lumbermens Mut. Cas. Co.*, 204 S.E.2d 829, 834 (N.C. 1974). "To be 'legally entitled to recover damages' a plaintiff must not only have a cause of action but a remedy by which he can reduce his right to damages to judgment."  *Id.* at 833.  Additionally, the amount due under the UIM policy "is conclusively determined in litigation against the [] motorist . . . ."  *Chew v. Progressive Universal Ins. Co*, No 5:09-CV-351-FL, 2010 WL 4338352, at *10 (E.D.N.C. Oct. 25, 2010) (first citing *Brown*, 204 S.E.2d at 834, then citing *McLaughlin v. Martin*, 374 S.E.2d 455, 456 (N.C. Ct. App. 1988)).  Therefore, under state law, a plaintiff is legally entitled to recover under a UIM

21

policy only once a judgment is issued against the underinsured motorist determining liability and damages owed to the plaintiff. ASIC was thus not required to settle Elliott's UIM claim until after it was determined that Elliott was legally entitled to recover from Jones—i.e., until after judgment was entered in *Elliott v. Jones*. With this in mind, we address Elliott's specific arguments.

Elliott asserts that ASIC's conduct violates Section 58-63-15(11)(f), (g), and (h). Section 58-63-15(11)(f) prohibits "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims *in which liability has become reasonably clear . . . .*" (emphasis added). We conclude that Elliott did not plausibly state a claim upon which relief can be granted based on this subsection because liability did not become reasonably clear until after a judgment was entered in *Elliott v. Jones*, and, consequently, ASIC had no obligation to settle Elliott's claim before this time.

Section 58-63-15(11)(g) prohibits "[c]ompelling [the] insured to institute litigation to recover *amounts due under an insurance policy* by offering substantially less than the amounts ultimately recovered in actions brought by such insured . . . ." (emphasis added). Elliott contends ASIC violated this subsection by first refusing to offer any settlement under the UIM policy, and then making "token offers" preceding arbitration. As with her claim under § 58-63-15(11)(f), however, we conclude that Elliott did not plausibly state a claim upon which relief can be granted based on this subsection because no amount was due to Elliott until liability had been determined, and, consequently, ASIC's alleged failure to make higher settlement offers prior to that time does not violate the statute.

Section 58-63-15(11)(h) prohibits "[a]ttempting to settle a claim for less than the

22

amount to which a reasonable man would have believed he was entitled . . . ." In her complaint, Elliott alleges that ASIC violated this subsection by attempting to settle the claim for less than the amount of UIM coverage provided by her policy. In her brief to this Court, she explains that it "can be reasonably inferred" that the amount she ultimately recovered is " 'the amount to which a reasonable man would have believed [she] was entitled' to recover," and that initially making no offer and later making "token offers" consequently violated § 58-63-15(11)(h). Reply Br. 23 (quoting § 58-63-15(11)(h)).

This argument has no merit, even when viewed in the light most favorable to Elliott. First, Elliott has not alleged any facts indicating that a reasonable person would have believed she was entitled to either the maximum coverage provided under the policy, or the amount ultimately recovered, *before* the fact or amount of liability had been determined. The mere fact of having UIM coverage does not entitle the insured to recover at all, or to recover the maximum amount of coverage. This is particularly true when the fact of liability has not been conclusively determined and, thus, a reasonable person should not believe they are entitled to a settlement offer for such an amount. Additionally, it cannot be that an insurance company per se engages in an unfair or deceptive trade practice simply because the settlement offers made are less than the final judgment rendered—especially when, as here, the amount to which Elliott was entitled was first determined in arbitration, after all settlement offers had been made. *See Chew*, 2010 WL 4338352, at *11 ("North Carolina law establishes the amount of the claim as that which could be recovered from the [] motorist in tort, and this had not been

23

established at the time of defendant's settlement offers." (first citing *Brown*, 204 S.E.2d at 834, then citing *McLaughlin*, 374 S.E.2d at 456)). Consequently, Elliott has failed to plausibly state a claim that ASIC's alleged token offers or its refusal to make an offer were less than what a reasonable man would have believed Elliott was entitled to.

Therefore, we hold that the district court did not err in granting ASIC's Rule 12(b)(6) motion to dismiss because Elliott failed to state a claim upon which relief could be granted under § 58-63-15(11), and consequently also failed to state a claim upon which relief could be granted under § 75-1.1, as a matter of law.

V.

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED*.